UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| BRIAN ZAHN,<br>　　　　　Plaintiff,<br><br>　v.<br><br>DR. FRANCIS HARVEY, Acting Secretary, Department of Army,<br><br>　　　　　Defendant. | NO. CV-03-0356-EFS<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

A bench trial was held in the above-captioned matter on October 27 and 28, 2008. Plaintiff Brian Zahn proceeded pro se; Assistant United States Attorney Andrew Biviano represented Defendant Dr. Francis Harvey, Acting Secretary of the Department of the Army. Mr. Zahn testified and also called four witnesses (Melanie Johanns, Jessica Jones, Dr. Glen Frese, and John Skibby) to support his Title VII, Americans with Disabilities Act (ADA), Rehabilitation Act (RA), and Washington Law Against Discrimination (WLAD) retaliation claims. Following Mr. Zahn's case, Defendant elected not to call witnesses. The Court took the matter under advisement and, after considering the legal standards and evidence presented, concludes that Mr. Zahn failed to carry his burden to prove these claims by a preponderance of the evidence. Accordingly, based on the Findings of Fact and Conclusions of Law set out hereafter, the Court finds for Defendant.

ORDER ~ 1

# FINDINGS OF FACT

## A. Undisputed Facts

1. This Court is vested with jurisdiction.

2. Mr. Zahn was at all times material hereto a resident of Douglas County, State of Washington, which is within the Eastern District of Washington.

3. For approximately twenty (20) years, Mr. Zahn worked as an electronic system control crafts worker at the Chief Joseph Dam Project ("the Dam"), operated by the United States Army Corps of Engineers ("Corps").

## B. Facts Found by the Court

1. Mr. Zahn was one (1) of three (3) electronic system control crafts workers at the Dam along with eighteen (18) operators under the supervision of John Skibby, Chief of Operations at the Dam. With the exception of a few days at the beginning of January 2001 and for a grievance hearing in February 2001, Mr. Zahn did not work at the Dam from June 21, 2000, to October 2001, when he began his retirement. During that period, Mr. Zahn was either on leave without pay, sick leave, or annual leave. Mr. Zahn applied for early retirement in May 2001.

2. Mr. Zahn filed workplace grievances and EEOC complaints in 2000, which are protected activities. While one or more of those complaints were on file, he was granted leave under the Family Medical Leave Act (FMLA) and met with Ed Reynolds, the Dam's Operations Project Manager, regarding his return to work. Mr. Zahn was permitted to return to work, albeit only for a few days in early 2001.

ORDER ~ 2

3.  Following a telephone conference with the Corps' Seattle headquarters on January 5, 2001, during which there was some discussion regarding the potential for workplace violence by Mr. Zahn, Mr. Reynolds sent Mr. Zahn both an e-mail and a certified letter instructing him not to return to work and denying him access to the Dam based on the medical letters Mr. Zahn submitted when he returned to work.  There is no evidence that anyone participating in the decision to issue this instruction was motivated by discriminatory bias or retaliatory animus relating to Mr. Zahn's EEOC complaints and workplace grievances.

4.  Mr. Skibby credibly described Mr. Zahn as an extremely intelligent man whom he had favorably evaluated as late as February 2000 as important to the Dam's operations.  Mr. Skibby favored Mr. Zahn's return to work at the Dam because he was needed.  Mr. Skibby did not deny any of Mr. Zahn's leave requests and properly forwarded Mr. Zahn's August 2000 FMLA request.  That this request was not acted on until October 2000 was not due to any bias or retaliation by Mr. Skibby.  Mr. Zahn did not prove that Mr. Skibby acted out of discriminatory animus or in retaliation for Mr. Zahn's EEOC complaints and workplace grievances. Mr. Skibby's evident irritation with the necessity for extra work associated with responding to Mr. Zahn's complaints and requests to return to work is understandable given his weighty duties as Chief of Operations.  Nothing in Mr. Skibby's demeanor while testifying supported any discriminatory bias or retaliatory attitude towards Mr. Zahn.  The decision to decline Mr. Zahn's request for an accommodation to allow telecommuting was neither unreasonable nor animated by discrimination or retaliation; rather, the Dam's control system precluded outside access

to its computer system and Mr. Zahn's duties required his presence at the Dam powerhouse. Further, there was no evidence that Mr. Skibby had any impact on the Corps decision, which was largely driven by Seattle headquarters, to issue the letter directing Mr. Zahn not to return to work. This letter ("the instruction") was prepared and sent by Ed Reynolds. There is also no evidence that Mr. Skibby opposed Mr. Reynolds' later effort to mediate with Dr. Frese and Mr. Zahn on a return to work.

    5. The only evidence of Mr. Reynolds' conduct was contained in the exhibits admitted and testimony about him because neither party took his deposition and Mr. Zahn's effort to subpoena him for trial failed. Neither the admitted exhibits nor the trial testimony demonstrated any discriminatory bias or retaliation by Mr. Reynolds. In fact, Mr. Reynolds' behavior, as reflected in the trial testimony and admitted exhibits, including Plaintiff's Exhibit No. 104-12 - a notation memorializing a financial award by Mr. Reynolds to Mr. Zahn for his work efforts - , demonstrated a sincere respect for Mr. Zahn and a genuine interest to find a solution enabling Mr. Zahn to return to work. This is most clearly demonstrated by his decision in the spring of 2001 to retain Dr. Frese, one of Mr. Zahn's treating care providers, to mediate with him and Mr. Zahn on returning to work.

    6. Mr. Zahn was well prepared at trial. He exhibited intelligence, diligence, and familiarity with the rules of evidence and procedure. He made appropriate objections and cogent legal arguments throughout the trial, including a motion for a directed verdict as a matter of law.

ORDER ~ 4

7.  The instruction not to return to work, together with the necessary dissemination of that instruction to appropriate personnel at the workplace, spawned rumors. Mr. Zahn was emotionally impacted by both the instruction and the rumors. As a long-time Dam employee, his work became a part of how he saw himself, a part of his self worth. It has been said, "we are what we do." It follows that the longer a person does a job, the more the person becomes it or the more it becomes a part of the person's self image and value. When a person is no longer permitted to do that job, particularly involuntarily, the impact on self image and psyche can be very damaging. Americans are workers - often said to be the most productive in the world. Putting pundits aside, American workers take pride in their work. There is also a dignity in work, particularly of the kind done by Mr. Zahn and the others at the Dam - a project of enormous importance to the Northwest - which is lost when that work is terminated. In a perfect world, perhaps the situation here could have been resolved without the instruction not to return to work, but perfection is not required. All that is required is that such an instruction not be issued because of discriminatory bias or in retaliation for protected activity. Here, there is no proof by a preponderance of the evidence that it was.

## **CONCLUSIONS OF LAW**

While the Court empathizes with Mr. Zahn and respects his intelligent and diligent presentation of his case, the Court concludes as a matter of law that Mr. Zahn did not prove by a preponderance of the evidence that Defendant violated Title VII, the ADA, the RA, or the WLAD.

ORDER - 5

**A.  Title VII**

Title VII, 42 U.S.C. § 2000e *et seq.*, prohibits employment discrimination, including retaliation.  In order to prove a Title VII retaliation claim, Mr. Zahn had the burden of proving by preponderance of the evidence that (1) he engaged in protected activity, (2) he suffered an adverse employment action, (3) the protected activity was a motivating factor in the adverse employment action, and (4) he suffered resulting damages.  *See Steiner v. Showboat Operating Co.*, 25 F.3d 1459, 1464 (9th Cir. 1994).

Mr. Zahn satisfied the first element by establishing that he filed workplace grievances relating to the distribution of overtime - a protected activity.  42 U.S.C. § 2000e-3(a).  Mr. Zahn, however, failed to present evidence that he suffered an adverse employment action motivated by this protected activity.  An adverse employment action is broadly defined as an employment action "reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000).  Whether the protected activity was a motivating factor - a factor that "played a part in the employment decision" - may be inferred from proximity in time between activity and action.  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 241 (1989) (plurality opinion); *Ray*, 217 F.3d at 1234.  If the employer would have made the same decision notwithstanding the employee's participation in the protected activity, then the employee will have failed to prove by a preponderance of the evidence that the protected activity was a motivating factor.  *Stegall v. Citadel Broad Co.*, 350 F.3d 1061, 1067-68 (9th Cir. 2004); *Costa v. Desert Place*, 299 F.3d 838, 857  (9th Cir. 2002).

ORDER - 6

Mr. Zahn failed to establish by preponderance of the evidence that his workplace grievances played a part in the decision to issue the "do not report to work" instruction. The evidence established that the Corps would have so instructed Mr. Zahn notwithstanding his workplace grievances. Accordingly, Mr. Zahn's Title VII claim fails.

**B.   ADA, RA, and WLAD**

Mr. Zahn also sought recovery under the ADA, RA, and WLAD for Defendant's alleged retaliatory conduct. The ADA provides, "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). Similarly, the RA states:

> No otherwise qualified individual with a disability in the United States, as defined in § 704(20) of this title, shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service. . . .

29 U.S.C. § 794(d). The WLAD prohibits discrimination "against any person in compensation or in other terms or conditions of employment because of . . . the presence of any sensory, mental, or physical disability . . . ." RCW 49.60.180(3)

The Ninth Circuit has recognized that the Title VII retaliation analytical framework is also used for the ADA, the RA, and the WLAD. *Barnett v. U.S. Airlines, Inc.*, 228 F.3d 1105, 1121 (9th Cir. 2000) (adopting Title VII analysis for the ADA); *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879 (9th Cir. 2004) (adopting ADA analysis for the

ORDER ~ 7

RA); *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1065 (9th Cir. 2003) (utilizing Title VII analysis for WLAD).  Because Title VII standards apply to ADA, RA, and WLAD retaliation claims, the Court likewise concludes that Mr. Zahn failed to carry his burden to prove by a preponderance of the evidence retaliation under the ADA, the RA, or the WLAD for requesting accommodation.

**CONCLUSION**

For the reasons given above, Mr. Zahn failed to establish by a preponderance of the evidence a violation of Title VII, the ADA, the RA, or the WLAD.  Accordingly, **IT IS ORDERED:**

1. **Judgment** shall be entered in Defendant's favor with prejudice.

2. The remainder of Mr. Zahn's Objections to Witness/Exhibit List and Motions in Limine **(Ct. Rec. 190)** are **DENIED AS MOOT**.  The Court's admissibility rulings are reflected on the record.

3. This file shall be **CLOSED.**

**IT IS SO ORDERED**.  The District Court Executive is directed to enter this Order, enter judgment in favor of Defendant and furnish copies to Mr. Zahn and counsel.

**DATED** this   31st   day of December 2008.

        s/Edward F. Shea        
         EDWARD F. SHEA
   UNITED STATES DISTRICT JUDGE

Q:\Civil\2003\0356.FoF.CofL.wpd

ORDER ~ 8